### HOLLEY v. LOUISIANA & A. RY. CO.*
### No. 4793.

Court of Appeal of Louisiana.
Second Circuit.

June 29, 1934.

Burford & White, of Shreveport, for appellant.

Henry W. Bethard, Jr., of Coushatta, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover an amount for depreciation in value of three of his work mules and one saddle mare as a result of injuries to them allegedly caused by the negligence of the operators of a train of defendant, and for an amount due him for doctoring and supplying medicine to the wounds of the injured animals and for an additional amount due him for the loss of use of said animals from the crops of 1932.

It is alleged that "on or about November 22, 1932, at or about four o'clock in the afternoon" said mules and mare, with other stock of plaintiff, were on the right of way of defendant about 300 yards south of a metal cattle guard in its track (which is on north boundary line of plaintiff's plantation), and that a mixed train of defendant approached said animals from the south, and, by continuously blowing its whistle and ringing its bell, frightened them and drove them up the right of way to, over, and across said guard; that the action of said train operatives was wanton, wrongful, malicious, and willful negligence on their part. It is further alleged that defendant's right of way is not fenced in Red River parish wherein the injury occurred.

*Rehearing denied July 16, 1934.

The defense is a general denial. It is admitted, however, that a part of defendant's right of way in Red River parish is not fenced, and it is affirmatively alleged that said right of way was fenced at the cattle guard when said stock were alleged to have been injured.

Plaintiff recovered judgment for an amount less than he sued for, and defendant prosecutes appeal. In this court plaintiff prays that the amount of the judgment be increased.

█ Defendant's track at the cattle guard in question and for a considerable distance southerly traverses lands owned by plaintiff alone or with others. On both sides of the right of way at the guard, and for some distance below, plaintiff has fences. The guard was put in the track at his request, and he then extended a wire fence from the guard to his plantation fences on either side, thus preventing his own stock from going above his property line and keeping other stock from gaining access to the interior of his own lands. At a point below the cattle guard, approximately 200 yards, the right of way is not fenced. There is a tract of woodland there which, we understand, is used for pasturage; and it was through this woodland that plaintiff's stock made their way to the right of way of defendant. In view of this situation, defendant's contention that, as there was a fence on both sides of its right of way at the place where the stock were injured, though not owned by it, it is entitled to the benefits of Act No. 110 of 1886, is not well founded.

██ The testimony in the case established beyond question that these injured animals, with a dozen others of plaintiff's, were driven over and/or frightened across the cattle guard by a train, although only one witness claims to have seen the animals running ahead of the train, and none saw them as they passed over the guard. The herd was seen by plaintiff and others on the right of way below the guard about thirty minutes before the train passed, and they were seen by plaintiff and several others north of the guard within forty minutes after the train passed. It was then discovered that two of the mules and the mare had fresh wounds in the "frog" of some of their feet, and that the other mule was badly cut across its left thigh. The wounds in the feet indicated that they had been made by pierces from the spikes or teeth of the cattle guard. There were other evidences on and about the guard corroborative of the contention that the animals had only recently passed over it. Many of the teeth were bent in a northerly direction. The cross fence on one side of the guard was torn loose from a post by a tenant of plaintiff's, and the stock were all driven back into the inclosure. The stock alarm whistle of the train blew unusually long a short time before the animals were discovered on the outside, and coincident therewith the train slowed down to a near stop at the guard and then resumed its progress northward. Defendant's section foreman admitted that plaintiff interviewed him about the injury to the stock the day after it was supposed to have happened. This employee of defendant admitted he saw animal tracks on both sides of the wings to the guard on that day.

While the petition states that the stock were injured "on or about November 22, 1932," plaintiff and his witnesses definitely fix the date as November 22, and the hour as between 3:30 and 5 o'clock of the afternoon. Defendant's records disclose that only one train going north passed there the evening of November 22. It reached Coushatta, four miles north of the guard, at 2:05 and arrived in Shreveport at 4:45 that evening. The crew in charge of this train all testified that no stock was seen by them on the track below the guard and none was driven through it on that date. No other time is mentioned or referred to.

We are inclined to believe that plaintiff and his witnesses are in error as to the date the stock were injured, but, as defendant did not move in limine to have the question of the time of the happening fixed as more definite than "on or about November 22," and having elected to take its chances to defeat the suit with the pleadings in the condition they were originally in, and not having offered any testimony fixing the date of the injury as other than November 22, and submitting no evidence whatever in support of its defense of lack of negligence, we think its liability, in view of Act No. 70 of 1886, has been clearly established. Having accepted plaintiff's challenge that the animals were injured "on or about November 22," defendant is presumed to have prepared to substantiate its defense that the injury did not occur on or about that date, or that, if it did so occur, it was free from any negligence in connection therewith. It was evidently in as good position on day of trial to submit testimony that its train did not negligently drive the stock across the guard on any day about November 22, as it was that it did not do so on the evening of November 22. In these circumstances, when plaintiff had made out at least a prima facie case as of November 22, it behooved defend-

ant, if it could, to show exactly the day the injury did occur, according to its records, if on a different date, and exonerate itself from negligence in connection therewith. Under the broad terms of Act No. 70 of 1886, plaintiff was only required to prove that the stock was injured by the train of defendant. He was not required to prove any negligence against defendant at all. It devolved upon defendant, after the fact of injury by its train had been established, to prove lack of negligence on its part. No testimony whatever was introduced on this issue.

 On the day before the case was tried, pursuant to prior fixing, counsel of defendant, by letter to counsel of plaintiff, expressed the desire to have the injured animals examined by a veterinarian of the city of Shreveport, and asked that said animals be pointed out for such examination. This request was refused by counsel in following language: "We refuse to permit this examination on the eve of trial for the very good reason that we do not have time to engage a veterinarian to offset the veterinarian hired and brought here by the defendant company. If this request had been made, say ten days ago it would have readily been granted."

It is now urged that, because of this refusal to allow the examination by veterinarian of defendant's selection, all testimony offered by plaintiff to prove nature and extent of the injuries to his stock, which was timely objected to, should be disregarded by us, citing as supporting this position the case of Daste v. First National Life, Health & Accident Ins. Co., 14 La. App. 565, 130 So. 572. The question is discussed elaborately, and the jurisprudence thereon fully reviewed by us in the recent case of Crutsinger v. B. F. Avery & Sons, Inc., 146 So. 789. As applied to injured persons, the rule is well fixed. We see no good reason why it should not be equally applicable to injured stock where damages are sought on account of such injuries; but, for a defendant to avail himself of this rule, his request for examination must be made at a time when, if granted, the opposite side will have the opportunity to prepare to meet or offset the testimony the doctors of defendant's choice will give. We do not think such a request coming within 24 hours of the beginning of trial timely, and for that reason the position of defendant is not well taken.

It appears that plaintiff carried defendant's claim agent and two other of its employees down to his plantation and showed the wounded animals to them within a short time after the injury occurred. He informed one of defendant's agents that he would also carry any veterinarian to inspect them that defendant would select, and offered to stand the expense of such veterinarian. His conduct in this respect negatives any purpose on his part to withhold from defendant a fair and timely examination of the animals.

Plaintiff has abandoned his claim for damages for loss of use of the injured stock from the 1932 crops. He contends that the allowance of $43 by the lower court for medicine, labor in treatment of the animals, and feed therefor should be increased to $65. The feed item is $16. The stock would have been fed by plaintiff if they had not been wounded, as he intended working them on his place.

We think the judgment of $243 of the lower court does substantial justice in the case, and it is affirmed.